U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

FEB 2 2 2013

TONY R. MOORE   CLERK
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

CALDWELL BURGESS

versus

CLECO CORPORATION

CIVIL ACTION NO. 11-1704

JUDGE TOM STAGG

## MEMORANDUM RULING

Before the court is the second motion for summary judgment filed by the defendant, Cleco Corporation ("Cleco"), seeking dismissal of all remaining claims alleged by the plaintiff, Caldwell Burgess ("Burgess").  See Record Document 122. Based on the following, Cleco's second motion for summary judgment is **GRANTED**.

## I.  BACKGROUND[1]

Burgess, along with twelve other current and former African-American employees of Cleco, brought an action against Cleco, alleging, inter alia, race discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, Section 1981 of the United States Code, the Louisiana Employment Discrimination

---

[1]Much of the background is adopted from the court's previous summary judgment ruling.  See Record Document 113.

Law, and the Louisiana Commission on Human Rights. <u>See</u> Record Documents 1, 5 and 25. The court ruled on Cleco's first motions for summary judgment as to the plaintiffs, and the remaining causes of action severed. <u>See</u> Record Document 115. Regarding the first motion for summary judgment as to the claims of Burgess, the court dismissed his Title VII claims, state law claims, and Age Discrimination in Employment Act ("ADEA") claims. <u>See</u> Record Document 114. The court now addresses Burgess's remaining claims of failure to promote, discrimination, retaliation, hostile work environment, and constructive discharge pursuant to 42 U.S.C. § 1981.

Burgess began working for Cleco in April of 1984 as an Auxiliary Operator at the Rodemacher Power Station facility. <u>See</u> Record Document 122, Ex. A at 6. In 1998, he became a Resource Coordinator and was promoted to Senior Resource Coordinator on October 11, 2003. <u>See</u> <u>id.</u>, Ex. B at ¶ 3. As a Senior Resource Coordinator, he was responsible for managing and coordinating, in real time, Cleco's energy purchases and sales through the hourly energy markets and next day transactions, with the goal of ensuring the most reliable product and to obtain the lowest priced power given a number of different variables. <u>See</u> <u>id.</u>, Ex. C at ¶ 4. In January of 2004, Cleco split the Resource Coordinator and Senior Resource Coordinator positions into two groups: Wholesale Resource Coordinators and Retail

2

Resource Coordinators. See id., Ex. C at ¶ 3. Burgess, Mark Lazarone ("Lazarone"),

and James Morgan ("Morgan") were the Senior Wholesale Resource Coordinators.

Their supervisor was Terry Spruill ("Spruill").  See id.  Burgess held this position

until he retired on February 1, 2006. See id., Exs. A at 9 and B at ¶ 3.

## II. ANALYSIS

### A.    Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil

Procedure when "there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law."[2]  Quality Infusion Care, Inc. v. Health

Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010).  "Rule 56[(a)] mandates the

entry of summary judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of

proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004).  If the movant

demonstrates the absence of a genuine dispute of material fact, "the nonmovant must

go beyond the pleadings and designate specific facts showing that there is a genuine

[dispute] for trial."  Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.

---

[2]The court notes that amended Rule 56 requires that there be "no genuine
**dispute** as to any material fact," but this change does not alter the court's analysis.
Fed. R. Civ. P. 56(a) and advisory committee's note (emphasis added).

2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

## B.    Pay Discrimination.

Burgess claims Cleco discriminated against him by paying him less than two Caucasian employees, Morgan and Lazarone, who also held jobs as Senior Resource Coordinators. Cleco argues in its motion for summary judgment that Burgess's pay discrimination claim has prescribed and otherwise has no merit. The court finds that the issue of timeliness need not be addressed and the claim is easily disposed of on the merits.

Morgan began working for Cleco on April 8, 2002, as a Resource Coordinator. See Record Document 122, Ex. B at ¶¶ 5, 7. Prior to that, he was a Senior Systems Dispatch with Entergy Services ("Entergy") for several years. Cleco maintains, and Burgess admits, that this position was comparable to a Resource Coordinator. While working at Entergy, Morgan earned an annual salary of $78,000. His annual salary

4

decreased to $70,008 when he began working at Cleco. On February 1, 2003, his annual salary increased to $72,516. On October 11, 2003, he became a Senior Resource Coordinator and continued to earn the same salary. See id.

Lazarone began working at Cleco in July of 1986 as a Lead Computer Operations Analyst. On March 2, 2002, he became a Resource Coordinator after his position as Manager-Commercial and Industrial Sales was eliminated due to a company reorganization. See id., Ex. B at ¶¶ 8,9. As Manager-Commercial and Industrial Sales, he earned an annual salary of $74,852. When he became a Resource Coordinator, his salary decreased to $72,516. On October 11, 2003, he became a Senior Resource Coordinator and continued to earn the same salary. See id.

When Burgess was promoted to Senior Resource Coordinator, he began earning an annual salary of $64,944. See id., Ex. B at ¶ 3. On January 31, 2004, Burgess received a merit increase such that his salary increased to $66,216. Morgan and Lazarone also received merit increases, and their salaries increased to $73,956. On January 29, 2005, Burgess's annual salary increased to $67,116, while the salaries of Morgan and Lazarone increased to $75,396. On July 16, 2005, Burgess received another pay raise, increasing his annual salary to $71,136, which was his rate of pay at retirement. See id., Ex. B at ¶¶ 10-12.

Under Title VII, "[a]n employee can prove discrimination through direct or

5

circumstantial evidence." Jones v. Robinson Prop. Grp., L.P., 427 F.3d 987, 992 (5th Cir. 2005).[3]  For cases of discrimination based on circumstantial evidence, the court applies the McDonnell Douglas burden-shifting analysis.  See Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 316-17 (5th Cir. 2004) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973)).

> To survive summary judgment under McDonnell Douglas, the plaintiff must first present evidence of a prima facie case of discrimination. If the plaintiff presents a prima facie case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action.[4]  If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination.

Davis, 383 F.3d at 317 (citations omitted).

Cleco assumes that Burgess can establish a prima facie case of pay discrimination and only argues the issue of pretext.  Cleco provides several legitimate, nondiscriminatory reasons why Burgess was paid less than his Caucasian

---

[3]Claims of racial discrimination in employment, pursuant to Title VII and section 1981, are governed by the same evidentiary framework. See DeCorte v. Jordan, 497 F.3d 433, 437 (5th Cir. 2007).

[4]"This burden on the employer is only one of production, not persuasion, involving no credibility assessments." Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000).

co-workers.  First, Morgan and Lazarone came to their positions with considerably greater skill and applicable experience than Burgess due to their respective past employment  positions as Senior Systems Dispatch and Manager-Commercial and Industrial Sales.  Second, they both had better qualifications than Burgess because both had obtained Balancing and Interchange Operator Certification from the North American Electric Reliability Corporation ("NERC certification").[5]  See id., Ex. B at ¶¶ 6, 8.  Burgess failed the exam three times and never received certification.  See id., Ex. A at 28-29.  Third, Morgan and Lazarone had better performance appraisals and lower rates of error than Burgess.  See id., Exs. B and C at ¶ 11.  Cleco also indicates that Morgan and Lazarone were earning higher salaries before assuming the Resource Coordinator positions and that factored into their compensation.

Cleco has met its burden of production; now the burden shifts to Burgess to show pretext.  "To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer."  Id.  "A plaintiff may establish pretext 'by showing that a discriminatory motive more likely motivated'" his employer's decision by such evidence as disparate treatment, or that the employer's

---

[5]In 2002, all Resource Coordinators were required to obtain NERC certification in order to reach senior status.  Morgan and Lazarone acquired their NERC certifications prior to becoming Senior Resource Coordinators.  Burgess was already senior status at the time the new requirement was implemented and was not required to get NERC certification to keep his position.  See Record Document 122, Ex. C at ¶ 5.

explanation is unworthy of credence. Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 220 (5th Cir. 2001) (quoting Defenbaugh-Williams v. Wal-Mart Stores, Inc., 156 F.3d 581, 589 (5th Cir. 1998)).  When conducting a pretext analysis, the court is not to engage in second-guessing an employer's business decisions.  See LeMaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 391 (5th Cir. 2007).  Anti-discrimination laws do not require an employer to make proper decisions, only non-discriminatory ones.  See id. (citing Little v. Republic Ref. Co., 924 F.2d 93, 97 (5th Cir. 1991)).

Burgess's rebuttal of Cleco's nondiscriminatory reasons is scant at best.  In his memorandum in opposition, Burgess only argues that "he discovered that he was being paid one thousand dollars a month less than his white co-workers who were doing the same job, even though he had more tenure and experience than the white employees."   Record Document 130, Memorandum in Opposition at 3.  Such conclusory allegations and unsubstantiated assertions are insufficient to survive summary judgment.  See Ramsey, 286 F.3d at 269.

Moreover, Burgess does not address each legitimate, nondiscriminatory reason articulated by Cleco.  The closest he comes to an actual attempt at rebuttal is in his statement of material facts.  Regarding his failure to pass the NERC exam, he argues that he was trained in St. Landry Parish while other employees were trained in Kansas City, and because he failed the exam, there must have been some difference in the

8

quality of training at those two locations. This is mere speculation and does not evidence pretext. Regardless, even if Burgess's assumption was true, he has not shown that the decision to send him to St. Landry Parish as opposed to Kansas City was made in bad faith. Burgess also does not address Cleco's justification that Morgan and Lazarone had more applicable experience than he, nor does he address Cleco's justification that Morgan and Lazarone earned higher salaries before they assumed positions as Resource Coordinators. Burgess only states in a conclusory fashion that he had more experience and tenure and was paid less because he is an African-American. Accordingly, his pay discrimination claim should be dismissed.

## C.    Failure To Promote.

Burgess brings three failure to promote claims: 1) failure to promote to Lead Power Plant Operator at the Rodemacher Power Station facility; 2) failure to promote to General Manager in 2004; and 3) failure to promote to Director-Marketing and Contracts. See Record Documents 122, Statement of Material Facts at ¶ 1; Record Document 130, Statement of Material Facts at ¶ 1. Cleco argues that Burgess's failure to promote claims have prescribed. Burgess makes no attempt to address these arguments in his opposition. As a result, he has effectively abandoned these claims. See Milton v. Boise Cascade, L.L.C., No. 08-1854, 2011 WL 285091 at *5 (W.D. La. Jan. 25, 2011); see also Keenan v. Tejeda, 290 F.3d 252, 262-63 (5th Cir. 2002).

9

However, in an abundance of caution, the court will address the timeliness of Burgess's failure to promote claims.

Section 1981 does not contain a statute of limitations. See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 371, 124 S. Ct. 1836, 1839 (2004). When a federal statute does not contain a statute of limitations, courts should apply "the most appropriate or analogous state statute of limitations." Id. Under Louisiana law, "[a] section 1981 claim is best characterized as a tort . . . and is, therefore, governed by the one-year prescriptive period for delictual actions dictated by [Louisiana Civil Code article] 3492."[6]  Taylor v. Bunge Corp., 775 F.2d 617, 618 (5th Cir. 1985). However, for actions arising under federal statutes enacted after December 1, 1990, courts must apply a catchall four-year statute of limitations. See 28 U.S.C. § 1658 ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.").

Section 1981 was originally enacted as part of the Civil Rights Act of 1866 and covered "only conduct at the initial formation of the contract and conduct which

---

[6]Under Louisiana anti-discrimination laws, the prescriptive period for employment discrimination claims is one year. See La. R.S. 23:303(D); Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ., 579 F.3d 546, 552 (5th Cir. 2009).

10

impairs the right to enforce contract obligations through legal process." <u>Patterson v.</u>
<u>McLean Credit Union</u>, 491 U.S. 164, 179, 109 S. Ct. 2363, 2374 (1989). Section
1981 "did not protect against harassing conduct that occurred after the formation of
the contract." <u>Jones</u>, 541 U.S. at 372, 124 S. Ct. at 1840 (citing <u>Patterson</u>, 491 U.S.
164, 109 S. Ct. 2363). Section 1981 was later amended by the Civil Rights Act of
1991 to create a cause of action for discriminatory and retaliatory conduct occurring
after the formation of the contract. <u>See id.</u> Thus, the applicable statute of limitations
depends upon whether the claim was actionable under the older version of section
1981 or is only made possible by the 1991 amendments. <u>See id.</u> at 382, 124 S. Ct. at
1845. Where the plaintiff's claim was available under the original section 1981, the
court must apply the analogous state statute of limitations, which in Louisiana is one
year. <u>See id.</u> at 371, 124 S. Ct. at 1839; <u>Taylor</u>, 775 F.2d at 618. However, where the
claim is only available under section 1981 as amended, the cause of action is said to
"arise under" the Civil Rights Act of 1991 and the federal four-year statute of
limitations provided by section 1658 applies. <u>See Jones</u>, 541 U.S. at 382, 124 S. Ct.
at 1845.

Failure to promote claims were actionable under section 1981, prior to the 1991
amendments, if "the nature of the change in position was such that it involved the
opportunity to enter into a new contract with the employer." <u>Patterson</u>, 491 U.S. at

11

185, 109 S. Ct. at 2377. As the Supreme Court explained in <u>Patterson</u>, "only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under [section] 1981." <u>Id.</u> "In deciding whether a change of position rises to the level of a new and distinct relation, the court must compare the employee's current duties, salary, and benefits with those incident to the new position." <u>Police Assoc. of New Orleans v. City of New Orleans</u>, 100 F.3d 1159, 1170-71 (5th Cir. 1996). If the new position involves "substantial changes," the failure to promote claim was available under section 1981 prior to the 1991 amendments and Louisiana's one-year prescriptive period applies. <u>See id.</u>; <u>see also Fonteneaux v. Shell Oil Co.</u>, 289 F. App'x 695, 699 (5th Cir. 2008). Otherwise, the claim is only available under section 1981 as amended and the four-year statute of limitations applies. <u>See id.</u>

Burgess filed his complaint on December 11, 2009. <u>See</u> Record Document 1. Any claims arising before December 11, 2005, have prescribed under the four-year catchall statute of limitations. Regarding the Lead Power Plant Operator position, Burgess ceased working at the Rodemacher Power Station facility and became a Resource Coordinator in 1998, so that claim prescribed well before December 11, 2009. As for the General Manager positions, they were filled in 2004. <u>See</u> Record Document 122, Ex. B at ¶ 15. The latest these claims could have arisen was in 2004,

12

therefore, these claims have also prescribed.

Regarding Burgess's claim of failure to be promoted to Director - Marketing and Contracts in 2008, this claim is actually a failure to rehire claim. Burgess retired on February 1, 2006, and the position became open in May of 2008 and was filled on May 31, 2008. See id., Ex. B at ¶ 17. Therefore, this claim cannot be construed as a failure to promote claim and must be analyzed as a failure to rehire claim. Failure to hire claims involve pre-contract formation conduct and were available under section 1981 before the 1991 amendments. See Mitchell v. Crescent River Port Pilots Assoc., 265 F. App'x 363 (5th Cir. 2008). Accordingly, Burgess's failure to rehire claim based upon the Director-Marketing and Contracts position is subject to Louisiana's one-year prescriptive period. Because Burgess filed his complaint over a year after the position was filled, his failure to rehire claim has prescribed.[7]

## D.   Miscellaneous Racial Discrimination And Retaliation Claims.

Burgess asserts numerous claims of racial discrimination and retaliation which include the following:  1) in 1984, Robert St. Romain informed Burgess that he could not fix a flat tire in the parking lot; 2) while working at the Rodemacher Power

---

[7]The court also notes that Burgess admits in his statement of material facts that he did not apply for this position. See Record Document 130, Statement of Material Facts at ¶ 25. Accordingly, even if his failure to rehire claim were timely, it would have failed on the merits.

Station facility, Burgess received lower performance appraisals than Caucasian coworkers; 3) in 2000 or 2001, Cleco allegedly failed to interview an African-American MIT graduate with whom Burgess had traded and who had expressed an interest to him in seeking employment in Louisiana; 4) in 2003, Spruill complained to Human Resources about Burgess's absences after Burgess was in a car accident; 5) he was sent to NERC certification training in St. Landry Parish, while his supervisor, Bryan Harper, was sent to NERC certification training in Kansas City; 6) he did not receive as much, or the same quality, NERC training as Caucasian employees; 7) a co-worker who failed the NERC exam subsequently was promoted to the position of director; 8) he was never praised for his work; 9) he was not informed when dealings with Occidental Energy Company were changed to "Occidental" in the Allegro system instead of "OXY;" 10) Spruill and Matthew Cripps allegedly made false statements to Human Resources regarding Burgess's conduct; 11) Spruill complained to Human Resources and Cleco's Chief Financial Officer regarding Burgess's mistakes and high error rate; 12) Burgess was asked to answer questions regarding the Allegro system until there was a question he could not answer; 13) in 2005, Burgess was "grilled" for accidentally buying late into a transaction that resulted in the unauthorized use of power; 14) Burgess allegedly was threatened with discipline and his work was criticized; 15) in 2005, Spruill

complained to Human Resources regarding Burgess's volunteer work after Hurricane Katrina, while he was supposed to be away from work on short-term disability; 16) there was an investigation into potential violations of company and federal regulations when he went on the retail trading floor on November 7, 2005;[8] and 17) he was criticized whenever he made a mistake. See Record Documents 1 at 40-43 and 5 at 40-43. Cleco argues that all of Burgess's discrimination and retaliation claims based upon these allegations are untimely, and if they were timely, Burgess could not establish a prima facie case or show pretext. Burgess does not attempt to argue the issue of prescription and, therefore, has waived these claims. The court still addresses the timeliness and merits of the claims below.

1. **Statute Of Limitations.**

As mentioned, claims of racial discrimination involving conduct occurring after the formation of a contract are subject to the catchall four-year statute of limitations. As a result, any claims arising out of conduct that occurred before December 11, 2005, have prescribed. Burgess went on short-term disability leave on September 19, 2005, and never returned to work before he retired on February 1, 2006. See Record Document 122, Ex. B at ¶ 13. Accordingly, any claims arising from conduct while

_____

[8]The parties do not give the court a description or explanation of the nature of the retail trading floor; however, this lack of information does not affect the court's decision.

Burgess was at work would have occurred before December 11, 2005, and are, therefore, untimely. Only two of Burgess's allegations occurred after Burgess went on disability leave.

First, Burgess complains that Cleco conducted an investigation into allegations that on November 7, 2005, he entered the retail trading floor in potential violation of Cleco policies and Federal Energy Regulatory Commission Standards of Conduct. See Record Document 122, Exs. A at 21-23 and D at 22-24. That investigation concluded on November 10, 2005, therefore, that claim prescribed on November 10, 2009, nearly a month before Burgess filed his claim. See id., Ex. C-3. Also, as mentioned, Burgess makes no argument to the contrary.

Second, Burgess alleges that Spruill complained to Human Resources of Burgess's volunteer work through Cleco for those affected by Hurricane Katrina. Cleco argues that Spruill's discussion with Human Resources occurred no later than the first week of November in 2005, and, therefore, this claim is untimely. The court has looked at the record, and it appears there is no evidence indicating when the alleged discriminatory conduct ended to resolve the timeliness issue. Nevertheless, Burgess has abandoned this claim by not addressing the timeliness issue.

16

2. **Merits.**

Burgess's discrimination claims also fail on the merits.  To establish his prima

facie case under <u>McDonnell Douglas</u>, Burgess must demonstrate that he:

> (1) is a member of a protected group; (2) was qualified for
> the position at issue; (3) was discharged or suffered some
> adverse employment action by the employer; and (4) was
> replaced by someone outside his protected group or was
> treated less favorably than other similarly situated
> employees outside the protected group.

<u>McCoy v. City of Shreveport</u>, 492 F.3d 551, 556 (5th Cir. 2007).   Adverse

employment actions include "only ultimate employment actions such as hiring,

granting leave, discharging, promoting, or compensating." <u>Id.</u> at 559 (quoting <u>Green</u>

<u>v. Adm'rs of Tulane Educ. Fund</u>, 284 F.3d 642, 657 (5th Cir. 2002)).

Burgess has not presented sufficient evidence to establish a prima facie case

of discrimination, nor has he presented sufficient evidence to demonstrate pretext.

None of his numerous allegations constitute ultimate employment actions.  He has

failed to demonstrate how these actions affected his job duties, salary, or benefits.

While Burgess may have found Cleco's conduct offensive, verbal reprimands and

unfair treatment do not constitute actionable adverse employment actions for claims

of discrimination.  <u>See</u> <u>King v. La.</u>, 294 F. App'x. 77, 85 (5th Cir. 2007).   On the

issue of pretext, Burgess only disputes Cleco's factual allegations and offers scant

evidence to the contrary. This is insufficient to create an issue of pretext. See Harris v. Miss. Transp. Comm'n, 329 F. App'x. 550, 557 (5th Cir. 2009).

Burgess's retaliation claims also fail on the merits. He claims that Cleco retaliated against him for complaining in 2003 through 2005 about his pay disparity. See Record Document 5 at 40-43. To establish a prima facie case of retaliation, a plaintiff must demonstrate that: 1) he engaged in a protected activity; 2) an adverse employment action occurred; and 3) a causal link exists between the protected activity and the adverse employment action. See McCoy, 492 F.3d at 556. Cleco argues that none of Burgess's numerous allegations amount to materially adverse employment actions. Cleco also argues Burgess's claims lack the requisite causal link because many of Burgess's allegations occurred before the protected activity in question and any other alleged wrongful conduct occurred more than a year later. Burgess only responds by stating that once he complained about the discriminatory pay, Cleco began to retaliate against him because of his race. This is not an adequate rebuttal of Cleco's argument but a conclusory statement of fact and will not satisfy his burden at summary judgment. As a result, he has failed to make his prima facie case of retaliation, and his claims must be dismissed.[9]

---

[9]Burgess also fails to present sufficient evidence to rebut Cleco's legitimate, nonretaliatory reasons on the issue of pretext.

18

**E.     Hostile Work Environment.**

In order to establish a hostile working environment claim, Burgess must prove

that:

> (1) [he] belongs to a protected group; (2) [he] was
> subjected to unwelcome harassment; (3) the harassment
> complained of was based on race; (4) the harassment
> complained of affected a term, condition, or privilege of
> employment; (5) the employer knew or should have known
> of the harassment in question and failed to take prompt
> remedial action. For harassment on the basis of race to
> affect a term, condition, or privilege of employment, as
> required to support a hostile work environment claim under
> Title VII, it must be sufficiently severe or pervasive to alter
> the conditions of the victim's employment and create an
> abusive working environment.
>
> In determining whether a workplace constitutes a
> hostile work environment, courts must consider the
> following circumstances: the frequency of the
> discriminatory conduct; its severity; whether it is
> physically threatening or humiliating, or a mere offensive
> utterance; and whether it unreasonably interferes with an
> employee's work performance.

Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002) (quotations and citations

omitted). "[S]imple teasing, . . . offhand comments, and isolated incidents will not

amount to discriminatory changes in the 'terms and conditions of employment.'"

Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283 (1998).

"The plaintiff bears the burden of showing that his employer failed to take effective

action." Skidmore v. Precision Printing & Packaging, Inc., 188 F.3d 606, 616 (5th Cir. 1999).

Burgess argues that the management of Cleco's Human Resources is "unchallenged proof [that he] suffered from an organized, continuing pattern of hostile work environment that denied Mr. Murchinson[sic] promotional opportunities because of his race." Record Document 130, Memorandum in Opposition at 5. Most of his arguments and factual allegations that follow thereafter are either conclusory or irrelevant. His argument focuses on specific allegations concerning Ed Taylor ("Taylor") and John Melancon ("Melancon"), two Human Resources managers. However, none of these allegations directly involve Burgess. Instead, they are statements by other individuals claiming that Taylor and Melancon routinely made racist comments and that Taylor and Melancon would engage in discriminatory conduct against African-Americans. Not once does Burgess raise any facts indicating that he was harassed by Taylor or Melancon, nor does he explain how the alleged conduct negatively impacted his work at Cleco. As a result, he has not presented evidence that he was subjected to unwelcome harassment as required by the second element of his hostile work environment claim.

As for any other allegations found within Burgess's opposition that could possibly be construed as relating to his hostile work environment claim, the court

20

does not find that these allegations rise to a level of severe and pervasive harassment to which he was subjected. Accordingly, Burgess has failed to establish a prima facie case for hostile work environment, and, therefore, his claim must be dismissed.

## F.     Constructive Discharge.

Burgess claims that he was forced into retirement due to the conduct already addressed herein. To prove constructive discharge, a "plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign." Faruki v. Parsons, S.I.P., Inc., 123 F.3d 315, 319 (5th Cir. 1997). Demonstrating constructive discharge imposes a high burden. To carry this burden, Burgess must "offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign." Id. In addition, constructive discharge requires a greater degree of harassment than that required by a hostile environment claim. See Benningfield v. City of Houston, 157 F.3d 369, 378 (5th Cir. 1998). Courts consider a variety of factors, including the following: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; (6) reassignment to work under a younger [or less experienced/qualified] supervisor; or (7) offers of early retirement [or continued employment on terms less

21

favorable than the employee's former status]. See Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001); see also Barrow v. New Orleans S.S. Ass'n, 10 F.3d 292, 297 (5th Cir. 1994).

In response to Cleco's arguments on this issue, Burgess only states that the working conditions were so horrible that he had no choice but to resign and that given the day to day humiliations he and other African-American employees suffered, a reasonable person would have left. The allegations herein do not support a claim for constructive discharge, and Burgess's argument does little to convince the court otherwise. Furthermore, Burgess failed to establish sufficient evidence of severe and pervasive harassment to support his hostile work environment claim, and, therefore, a fortiori, he has not presented sufficient evidence to make his prima facie case for constructive discharge. Accordingly, his constructive discharge claim must be dismissed.

## III.  CONCLUSION

Based on the foregoing analysis, Cleco's second motion for summary judgment (Record Document 122) is **GRANTED**.  The court finds there is no genuine dispute as to any material fact with regard to any of Burgess's claims.

A judgment consistent with the terms of this Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the 21st day of February, 2013.

JUDGE TOM STAGG

23